1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

| | | |
|---|---|---|
| MICHAEL LAWRENCE THOMPSON, | ) | Case No. EDCV 16-0650-AS |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | |
| v. | ) | **REMAND** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

18
19        Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED
20   that  this  matter  is  remanded  for  further  administrative  action
21   consistent with this Opinion.
22   //
23   //
24   //
25   //
26   //
27   //
28   //

**PROCEEDINGS**

On April 11, 2016, Plaintiff Michael Lawrence Thompson ("Plaintiff") filed a Complaint seeking review of the denial of his applications for disability insurance benefits and supplemental social security income. (Docket Entry No. 1). On September 19, 2016, Defendant filed an Answer and the Administrative Record ("AR") (Docket Entry Nos. 19-20). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 10, 14). On December 8, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15; (Docket Entry No. 7 (Order Re: Procedures In Social Security Appeal)).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On July 25, 2012, Plaintiff, a former construction worker, applied for disability insurance benefits, alleging a disability beginning on February 15, 2011. (AR 27, 182-96). In addition to physical impairments such as lumbar disc herniations and radiculopathy, Plaintiff attributed his disability to depression and bipolar disorder. (AR 23).

//
//
//
//

On May 28, 2014, Administrative Law Judge ("ALJ") James P. Nguyen examined records, and heard testimony from Plaintiff and vocational expert Alan L. Ey.[1]  (AR 40-81).  On August 7, 2014, the ALJ denied Plaintiff benefits in a written decision, finding that Plaintiff retained the capacity to perform certain sedentary work.  (AR 21-35).  The Appeals Council denied review of the ALJ's decision.  (AR 1-6).

Plaintiff provided the following testimony at the May 28, 2014 hearing:  Plaintiff was thirty-two years old on February 15, 2011, the alleged onset date of his disability.  (AR 44, 182).  On that date, Plaintiff injured his back on a construction job, sustaining lumbar disc herniations and radiculopathy.  (Joint Stip. 3; AR 44, 182).  Plaintiff has attended physical therapy and seen personal physicians for pain medication and spinal injections.  (AR 49, 54-55).  Plaintiff's physicians have offered surgical treatment, but Plaintiff has declined due to the potential complications involved.  (AR 55).

Plaintiff, a married father of three young children, requires a cane for ambulation and spends most of his time at home, sitting or lying down.  (AR 66-67, 70).  He cannot stand or walk for more than "two to five minutes" at a time.  (AR 71-72).  Plaintiff tends to not walk more than the distance between his house and car.  (AR 72).  Plaintiff cannot carry more than five pounds and does not carry weight except when

//

//

---

[1]  The reference to a hearing date of August 11, 2014 appears to be a typographical error.  (AR 42).

3

he occasionally carries light groceries.  (AR 70).  Plaintiff cooks two to three times per week, but does not perform other chores or have other household duties aside from occasionally driving his children around when his wife is unable to do so.  (AR 45, 47, 72).

Relevant portions of the medical record are summarized as follows:  In addition to his spinal impairments, Plaintiff has suffered from depression and bipolar disorder.  (Joint Stip. 4).  On August 2, 2012, Plaintiff presented to psychologist Heidi Gay Joffrion for evaluation of depression, anger and substance dependence (AR 292-97).  Plaintiff's mental status examination revealed depressed mood, motor retardation, and recently impaired judgment and impulsivity.  (AR 295-96).  Dr. Joffrion diagnosed major depression, cannabis dependence, alcohol intoxication and the need to rule out bipolar disorder, with a Global Assessment of Functioning ("GAF") of 50, no higher than 55,[2] in the preceding twelve months (AR 296).

At a September 13, 2012 follow-up examination, Dr. Joffrion diagnosed depression and cannabis dependence with a GAF of 55,[3] and recommended individual counseling, weekly group therapy, a chemical dependency program, and a medical referral for pain management.  (AR

---

[2]   The GAF scale reflects a clinician's assessment of the individual's overall level of functioning.  See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994) ("DSM-IV").  A GAF between 41 and 50 is characterized by serious symptoms such as suicidal ideation or any serious impairment in social, occupational or school functioning.  See DSM-IV at 32.

[3]   A GAF between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning.  See DSM-IV at 34.

301, 303).  Plaintiff often did not avail himself of these options, as evidenced by Dr. Joffrion's notation that Plaintiff was "noncompliant much of the time."  (AR 302).

On January 5, 2013, Plaintiff presented to the emergency room at Fontana Medical Center with suicidal ideation and depression.  (AR 390). Examination showed Plaintiff to be tearful with superficial lacerations to the left forearm.  (AR 391-92).  Emergency room staff consulted with the psychiatry unit, whose subsequent mental examination revealed impulsivity, reports of delusions, hallucinations and seeing "dark shadows," and a history of self-harm.  (AR 393, 395).  Plaintiff was discharged that same day with diagnoses of major depression and a GAF of 55, and given prescriptions for Effexor, Trazadone and Triptyline.  (AR 392-93, 395).

On February 13, 2014, Plaintiff attempted suicide by overdosing on Ibuprofen and Flexeril.  (AR 408).  After he was stabilized, Plaintiff was admitted to the psychiatric department of Redlands Community Hospital for further evaluation.  (AR 408).  Mental status examination revealed a fair and appropriate mood and affect with recall of only two of three items after a brief delay; fair attention span; poor digit span; poor serial sevens; and impaired insight and judgment.  (AR 411-12).  Plaintiff was diagnosed with bipolar disorder, most recent episode

//
//
//
//
//

mixed; polysubstance abuse in remission; cannabis dependence; status post-overdose; and a GAF of 20.[4]  (AR 412).

At a follow-up examination held the next day, Plaintiff's peer interactions were remarkable for evidence of paranoia and guarded, isolative and withdrawn behavior; panic attacks, agitation, delusions, paranoia, racing thoughts, hopelessness, helplessness, worthlessness and poor medication compliance.  (AR 419).  Plaintiff's affect and expression were depressed, with a fair attention span, and he exhibited impaired judgment, and low motivation and energy.  (AR 419-20). Plaintiff was discharged on February 15, 2014.  (AR 421).

On March 14, 2014, psychiatrist Mirou Dom ("Dr. Dom") evaluated Plaintiff.  (AR 427).  Dr. Dom prescribed a treatment plan of Seroquel and lithium for management of mood lability, depression and psychosis; Trazodone for acute insomnia; and psychotherapy.  (AR 427).

At a follow-up examination held on April 11, 2014, Dr. Dom increased Plaintiff's Seroquel dosage and continued him on lithium and Trazodone.  (AR 432).  In a Summary Mental Assessment dated April 11, 2014 (the "SMA"), Dr. Dom diagnosed bipolar disorder, most recent episode depressed with psychosis, chronic back pain and a GAF of 55. (AR 429-31).  The SMA also noted Plaintiff's two psychiatric hospitalizations and Dr. Dom's clinical findings supporting his diagnoses.  (AR 429, 431).  Dr. Dom found that Plaintiff would be

---

[4]  A GAF of 20 indicates "[s]ome danger of hurting self or others (e.g. suicide attempts without clear expectation of death) . . . OR gross impairment in communication."  See DSM-IV at 34.

1  moderately-to-markedly limited (_i.e._, limited during one-third to two-
2  thirds of a workday) in myriad categories related to his ability to
3  work, including his abilities to carry out detailed instructions,
4  maintain attention and concentration for extended periods, make simple
5  work-related decisions, and complete a workday without interruptions
6  from psychological symptoms. (Joint Stip. 8; AR 430). Dr. Dom added
7  that Plaintiff would likely miss work more than three times per month
8  and that the assessed limitations would apply starting in 2011, when he
9  was diagnosed with bipolar disorder. (AR 431).

10
11  **The ALJ's Decision**
12
13      The ALJ applied the five-step process in evaluating Plaintiff's
14  case. (AR 23-35). At step one, the ALJ determined that Plaintiff had
15  not engaged in substantial gainful activity after the alleged onset
16  date. (AR 23). At step two, the ALJ found that Plaintiff's severe
17  impairments included multiple disc protrusions and spinal stenosis in
18  the lumbar spine, lumbar radiculopathy, hyperlipidemia, headaches,
19  obesity, bipolar disorder and major depressive disorder. (AR 23). At
20  step three, the ALJ found that Plaintiff's impairments did not meet or
21  equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR
22  23-24).
23  //
24  //
25  //
26  //
27  //
28  //

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[5] to perform sedentary work with the following further limitations:

> [C]an occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds . . . can occasionally balance, stoop, kneel, crouch, and crawl . . . should avoid working around unprotected heights . . . requires the use of a cane for ambulation if moving away from the workstation . . . can understand, remember, and carry out simple job instructions . . . can maintain attention and concentration to perform simple, routine, and repetitive tasks . . . can have frequent interaction with coworkers, supervisors, and the general public . . . can work in an environment with occasional changes to the work setting and occasional work-related decision-making.

(AR 26).

In making the RFC finding, the ALJ rejected Dr. Dom's assessment of Plaintiff. (AR 32). The ALJ primarily took issue with Dr. Dom's SMA, finding that it was conclusory, "checklist-style," and unsupported by objective evidence. (AR 32). Specifically, the ALJ wrote the following:

> The undersigned has read and considered the [SMA] . . . This checklist-style form appears to have been completed as an accommodation to [Plaintiff] and includes only conclusions regarding functional limitations without any rationale for those conclusions. Dr. Dom indicated that for nearly every domain [Plaintiff] has either moderate or moderate-to-marked limitations . . . [Dr. Dom] indicated that [Plaintiff] has a diagnosis of bipolar disorder type I, the most recent episode of

---

[5] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1
2
3
4
5
6

which was depressed with psychosis . . . However, the findings and written statements of [Dr. Dom] on the [SMA] are conclusory and do not indicate what objective evidence underlies [his] opinions, and appear to be based primarily on [Plaintiff's] subjective complaints, which have been determined to be not fully credible. The undersigned finds this evidence has no probative value because there is no objective evidence to support it. Accordingly, this opinion is given no weight.

7   (AR 32).

8

9   Based on his findings, the ALJ determined that Plaintiff's
10  subjective complaints were "less than fully credible" and inconsistent
11  with objective medical evidence. (AR 33). The ALJ also pointed out
12  Plaintiff's history of non-compliance regarding recommended mental
13  health treatment. (AR 32). For example, the treatment records showed
14  that Plaintiff failed to comply with prescribed medications in late 2012
15  and in January 2013 before his first hospitalization. (AR 31). The
16  records also demonstrated that Plaintiff failed to show up for
17  outpatient psychiatric treatment on multiple occasions (AR 31, 393).
18  The ALJ noted a lack of psychiatric treatment from February 2013 to
19  Plaintiff's suicide attempt in February 2014, which occurred after
20  Plaintiff had failed to take his prescribed medications for the prior
21  three months (AR 31). Based on these findings, the ALJ concluded that
22  "[Plaintiff] has repeatedly declined to pursue the treatment
23  recommendations of his doctors, which demonstrates a possible
24  unwillingness to do what is necessary to improve his condition, or it
25  may also be an indication that his symptoms are not as severe as he
26  purports." (AR 31-32).

27  //

28

9

The ALJ also referenced inconsistencies between Plaintiff's testimony and his actions. For example, the ALJ noted that Plaintiff's refusal to attend recommended individual and group therapy sessions, alleging a lack of transportation, was inconsistent with his testimony that he drove to pick up his prescriptions, take his children to school and visit other family members. (AR 31).

The ALJ cited other inconsistencies surrounding Plaintiff's allegations and treatment. The ALJ found that "[Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 28). The ALJ gave the following specific examples:

> Despite his impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity. For example, [Plaintiff] testified that he is able to cook simple meals, care for his three children at least part of the time, and independently do some grocery shopping and fill his prescriptions. [Plaintiff] is able to drive his children to school when needed. Some of the physical and mental abilities and societal interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The [ALJ] finds [Plaintiff's] ability to participate in such activities diminishes the credibility of [his] allegations of functional limitations.

(AR 28).

The ALJ noted the following additional inconsistencies in Plaintiff's testimony:

> [Plaintiff] testified at length about his difficulties in handling money appropriately, yet when asked whether he could manage his benefit should he be awarded them [he] was confident that

1
2
3
4
5

> he could so do. At times, [Plaintiff's] responses
> while testifying were evasive or vague and left the
> impression that [he] may have been less than
> entirely candid, particularly when [he] was
> testifying as to his share of responsibility for
> childcare given his wife's work schedule, which
> would require her to sleep during the day for a
> portion of every week and leave [him] alone with
> the children while she was at work.

6
(AR 28).

7
8
9
The ALJ also found that Plaintiff's consistent work history before the alleged onset date of February 15, 2011, was incompatible with a serious mental illness. (AR 31).

10
11
12
13
14
15
16
17
18
At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work but that he could seek work as a Document Preparer, Order Clerk (Food and Beverage) or Final Assembler, which were all jobs existing in significant numbers in the national economy. (AR 33-34). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 34-35).

19
20
**STANDARD OF REVIEW**

21
22
23
24
25
26
27
28
"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)). Thus, the court may not substitute its judgment for that of the ALJ "[i]f the evidence can support either affirming or

1  reversing the ALJ's conclusion." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d
2  880, 882 (9th Cir. 2006).  However, the court "must consider the entire
3  record as a whole and may not affirm simply by isolating a 'specific
4  quantum of supporting evidence.'" <u>Id.</u> (quoting <u>Hammock v. Bowen</u>, 879
5  F.2d 498, 501 (9th Cir. 1989)).

7                      **PLAINTIFF'S CONTENTIONS**

9      Plaintiff claims that the ALJ erred by failing to provide clear and
10 convincing reasons for (1) rejecting Dr. Dom's assessment (Joint Stip.
11 6-13); and (2) finding Plaintiff's testimony and subjective complaints
12 not credible.  (Joint Stip. 15-17).

14                           **DISCUSSION**

16      After consideration of the record as a whole, the Court finds that
17 the ALJ did not materially err in finding Plaintiff's testimony
18 regarding his functional limitations not credible.  However, Plaintiff's
19 first claim warrants remand for further consideration, as the Court
20 finds that the ALJ erred in rejecting the assessments of Plaintiff's
21 treating psychiatrist, Dr. Dom.

23 **A.   <u>The ALJ Properly Discounted Plaintiff's Credibility</u>**

25      An ALJ's assessment of a claimant's credibility is entitled to
26 "great weight."  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir.
27 1990) (citation omitted). "To determine whether a claimant's testimony
28 regarding subjective symptoms is credible, an ALJ must engage in a

two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id.  (citing Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.1996)).  Because it is undisputed that Plaintiff suffers from mental health issues which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ must have set forth specific, clear and convincing reasons for rejecting Plaintiff's testimony.

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Plaintiff contends that the ALJ set forth *only* the following two rationales for discounting his credibility: one, that a consistent work schedule prior to the alleged onset date was incompatible with a serious mental illness; and two, non-compliance with recommended treatment. (Joint Stip. 15-16).  The Court disagrees.  In addition to these two

grounds, the ALJ pointed to inconsistencies within Plaintiff's testimony, as well as inconsistencies between Plaintiff's testimony and his conduct and daily activities to support his adverse credibility findings. (AR 28-31).

As set forth below, the Court finds that under the factors listed in <u>Smolen</u>, the ALJ did not err in finding Plaintiff's testimony regarding his complaints and limitations not credible.

1.   <u>Inconsistencies In Plaintiff's Testimony</u>

The ALJ noted several inconsistencies within Plaintiff's testimony: Plaintiff had difficulties in managing money (AR 16, 18-20), but believed he could effectively manage any benefits received in this matter. (AR 28, 33). Plaintiff claimed to have minimal childcare duties, but his wife had a nocturnal work that required her to sleep during the day, leaving Plaintiff alone with their three children while she was at work. (AR 28). Additionally, Plaintiff alleged he could not attend therapy because of a lack of transportation, but drove to pick up prescriptions, take his children to school, and visit other family members. (AR 31). Accordingly, the ALJ properly discredited Plaintiff's testimony based on its internal inconsistency. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) ("The ALJ may consider . . . when weighing the [plaintiff's] credibility . . . inconsistencies either in [his] testimony or between [his] testimony and [his] conduct.")

//

//

14

1          2.   Failure To Follow Prescribed Courses Of Treatment

2

3          An  unexplained  or  inadequately  explained  failure  to  follow  a

4   prescribed course of treatment is a basis for discounting a claimant's

5   credibility.  Smolen, 80 F.3d at 1284; see also Molina v. Astrue, 674

6   F.3d 1104, 1112 (9th Cir. 2012) ("We have long held that, in assessing

7   a claimant's credibility, the ALJ may properly rely on 'unexplained or

8   inadequately  explained  failure  to  seek  treatment  or  to  follow  a

9   prescribed course of treatment.'") (quoting Tommasetti v. Astrue, 533

10  F.3d 1035, 1039 (9th Cir. 2008).  Stated differently, a plaintiff's

11  failure to assert a reason for not following a prescribed course of

12  treatment, "or a finding by the ALJ that the proferred reason is not

13  believable,  can  cast  doubt  on  the  sincerity  of  the  [plaintiff's

14  testimony]."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

15

16          Here, it is undisputed that Plaintiff failed to follow numerous

17  prescribed courses of treatment (Joint Stip. 16).  However, Plaintiff

18  did not provide any excuses for such failure other than forgetfulness,

19  feeling that he did not need to follow them, or an inability to pursue

20  them due to lack of transportation as noted above (AR 69, 427).[6]  The

21  Court finds that the ALJ properly relied on Plaintiff's failure to

22  follow  prescribed  courses  of  treatment  to  discount  Plaintiff's

23  credibility.

24

25

26      [6]  Plaintiff's contention that his failure to follow prescribed
    treatment  is  indicative  of  his  disability  is  inappropriate  for
27  consideration at this juncture, as this contention was not before the
    ALJ.   See  Meanel v. Apfel,  172 F.3d 1111, 1115 (9th Cir. 1999)
28  (plaintiffs must raise issues at administrative hearing to preserve them
    on appeal).

3.   <u>Activities of Daily Living</u>

An ALJ may properly rely on inconsistencies between a claimant's testimony and her conduct and daily activities.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 680-81 (9th Cir. 2005) (daily activities such as caring for personal needs, cooking, cleaning and shopping can constitute "clear and convincing reasons" for discounting a claimant's testimony).  Here, the ALJ cited Plaintiff's testimony that despite his impairments, he was able to cook, care for his three children at least part of the time, and independently do some grocery shopping and fill his prescription.  (AR 28).  The ALJ also noted that Plaintiff drove his children to school when needed.  (AR 28).  Thus, the ALJ's finding that Plaintiff's ability to participate in such activities was inconsistent with his allegations of disability was a clear and convincing reason to discount his credibility.

4.   <u>Plaintiff's Pre-Onset Work History</u>

An ALJ may rely on poor work history prior to the alleged onset date to discount a claimant's credibility. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).   The ALJ attempted to apply this principle to the present case.  However, there is no evidence that Plaintiff had a poor work history before the onset date.  In fact, the opposite appears to be true.  The ALJ found that Plaintiff had a consistent work history before the January 2011 onset date and that this was "incompatible" with a serious mental illness.  (AR 31).  Unable to locate any precedent for the ALJ's particular reasoning, the Court finds that the ALJ erred in relying on Plaintiff's positive work history prior

16

to the onset date to discount his credibility.  However, this error is harmless, as the ALJ provided other specific, clear and convincing reasons in finding Plaintiff's testimony not credible as discussed above.  See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error to be harmless when it was inconsequential to the ultimate nondisability determination).

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds.  The Court therefore defers to the ALJ's credibility determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific findings justifying a decision to disbelieve a plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "[the court] may not engage in second guessing."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

**B.**   **The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting The Mental Function Assessments Of Plaintiff's Treating Psychiatrist**

An ALJ may reject the uncontradicted opinion of a treating physician only for "clear and convincing reasons that are supported by substantial evidence."  Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th

Cir. 2014) (quoting <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005)).  Here, Dr. Dom's assessment is uncontroverted, as he is the only physician of record to have both examined Plaintiff and evaluated the functional impact of his bipolar disorder and depression.  Thus, the "clear and convincing" standard is applicable.

An ALJ may reject "check-off" physician's reports that do not contain any explanation of the bases of the physician's conclusions or are not supported by objective evidence.  <u>Molina</u>, 674 F.3d at 1111 (9th Cir. 2012) (citing <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996); <u>see also</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004).  However, such reports, when they are accompanied by comments explaining the reasons for the physician's responses or supported by objective evidence, should not be rejected.  <u>Smolen</u>, 80 F.3d at 1288 (9th Cir. 1996) ("Moreover, the questions called not only for yes-or-no answers, but also for comments from the physicians in support of their answers. Dr. Smolen's responses were accompanied by comments explaining the reasons for each of his responses. Those comments . . . appear to be based on Dr. Smolen's knowledge of [the plaintiff's] medical history and his experience in his specialty.").

The ALJ found the SMA to be a conclusory, checklist-style form that did not reference supporting objective evidence. (AR 32).  However, the SMA references Plaintiff's years- long history of treatment for bipolar disorder and depression, specifically refers to Plaintiff's prior bipolar diagnosis and psychiatric hospitalizations in 2012 and 2013, and contains handwritten notations detailing Dr. Dom's clinical findings, signs and symptoms supporting his diagnoses based upon mental status

examinations and psychological testing.  (AR 429-431).  Contrary to the ALJ's findings, Dr. Dom's assessment referenced Plaintiff's medical history, test results and objective observations.  Dr. Dom, who evaluated Plaintiff twice before issuing the SMA, listed the following observations:  dysphoric, irritable and manic mood, difficulty concentrating and focusing, and exhibiting signs of paranoia.  (AR 431).

Accordingly, the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Dr. Dom's uncontradicted assessment of Plaintiff.

**C.**     **Remand Is Warranted**

The decision whether to remand or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record is fully developed, it is appropriate to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

//

//

//

Here, the Court has determined that the ALJ erred by not providing legally sufficient reasons for rejecting the uncontroverted opinion of Dr. Dom, Plaintiff's treating psychiatrist.  On remand, the ALJ must set forth specific, and clear and convincing reasons for rejecting Dr. Dom's assessment (e.g., citing to a legally sufficient opinion from a consultative or non-treating psychiatrist).  Because outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the discredited evidence were credited as true, the Court finds this to be an instance where further administrative proceedings would serve a useful purpose.  Remand is therefore appropriate.

**ORDER**

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY

DATED: January 18, 2017.

                                         _____/s/_____
                                         ALKA SAGAR
                       UNITED STATES MAGISTRATE JUDGE